UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROGER M. ESTILL, et al.,

        **Plaintiffs,**                        **Case No. 2:08-cv-606**
                                              **JUDGE GREGORY L. FROST**
        **v.**                               **Magistrate Judge Terence P. Kemp**

GEORGIANNA COOL, et al.,

        **Defendants.**

**OPINION AND ORDER**

This matter is before the Court for consideration of Plaintiff Roger Estill's motion for a preliminary injunction (Doc. # 3) and its original and first amended supporting memoranda (Docs. # 4, 8), Defendant Jennifer Brunner's memorandum in opposition (Doc. # 9), and Estill's reply memorandum (Doc. # 11).  For the reasons that follow, the Court finds the motion not well taken.

**I.  Background**

The following facts briefly summarize the evidence submitted to the Court.  The findings of fact and conclusions of law made by the Court in connection with the request for injunctive relief are not binding at a trial on the merits.  *See United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citing *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981)).

Plaintiffs Roger Estill and Denise Estill initiated this case on June 24, 2008 when they filed a complaint for declaratory and injunctive relief related to Roger Estill's attempt to be placed on the November 4, 2008 ballot as an independent candidate for sheriff of Holmes County, Ohio.  (Doc. # 2.)  On June 27, 2008, one or more of the plaintiffs then filed a motion

for a preliminary injunction variously seeking to prevent "Defendants from enforcing the full time requirement contained in Ohio Rev. Code § 311.01(B)(8)(a) and/or (b)" (Doc. # 3, at 1) or to order "Plaintiff Roger M. Estill's name be placed on the ballot for the November 4, 2008 general election for the office of Sheriff of Holmes County, Ohio" (Doc. # 11, at 11).[1] Consequently, pursuant to S.D. Ohio Civ. R. 65.1(a), the Court held a July 1, 2008 informal preliminary telephone conference with counsel for Plaintiffs and counsel for Defendants, which resulted in an agreed-upon briefing schedule and an August 12, 2008 oral hearing.

Plaintiff Roger Estill and the defendants who comprise the Holmes County Board of Elections have stipulated to the following facts:

1.  Plaintiff Roger M. Estill is a resident and qualified elector of Holmes County. Ohio, who timely filed a petition seeking placement on the November 4, 2008 general election ballot as an independent candidate for the office of Holmes County Sheriff.

2.  Plaintiff Denise A. Estill is a resident and qualified elector of Holmes County, Ohio. who supports the candidacy of Plaintiff Roger Estill for the office of Holmes County Sheriff and intends to vote for Plaintiff Roger Estill for such office at the November 4,2008 general election if his name appears on the ballot.

3.  Defendants Georgianna Cool, Lucille L. Hastings, Wesley J. Schmucker, and Ann Stotler are the members of the Holmes County Board of Elections ("Board of Elections"), the duly authorized board of elections of Holmes County, Ohio that, pursuant to Ohio Rev. Code Chapter 3501, is charged with the authority and power to conduct all elections within Holmes County, Ohio.

4.  Defendant Jennifer L. Brunner ("Secretary of State") is the Secretary of State of the State of Ohio, who is charged with the authority to direct and

---

[1] The Court notes that only one plaintiff, presumptively Roger Estill, actually moved for a preliminary injunction, although the briefing at times includes his wife Denise. *Compare* Doc. # 3, at 1 *with* Doc. # 8, at 1 & Doc. # 11, at 5. The Court has considered the arguments of both Plaintiffs, although for ease of reference, the Court shall use "Estill" to refer to only Roger Estill.

advise the county boards of elections with respect to the conduct of all elections in the State of Ohio.

5.      On January 28, 2008, Plaintiff Roger Estill filed with Defendant Board of Elections a nominating petition pursuant to Ohio Rev. Code §§ 3513.257 and 3513.261 to be an independent candidate for the office of Holmes County Sheriff at the November 4, 2008 general election.

6.      On May 13, 2008, Nathan E. Fritz, the chief deputy for the incumbent Holmes County Sheriff, Timothy W. Zimmerly, filed a protest of Plaintiff Roger Estill's candidacy. In the protest, Mr. Fritz alleged that Plaintiff Roger Estill did not meet the qualifications to run for sheriff under Ohio Rev. Code §311.01(B)(8)(a) or (b).

7.      On June 4, 2008, Defendant Board of Elections held a hearing and sustained the protest challenging Plaintiff's qualifications to appear on the November 4, 2008 general election ballot.

8.      The incumbent Holmes County Sheriff, Timothy Zimmerly, is the only candidate that Defendant County Board of Elections has certified for the November 4, 2008 general election for the office of county sheriff. Plaintiff Roger Estill and Zimmerly are the only two individuals to file petitions to be candidates in 2008 for the office of Holmes County Sheriff.

(Doc. # 21, at 1-2.)  Additionally, the Estills have entered into the following factual stipulations

with Brunner:

1.      The board of elections of the appropriate county, not the Secretary of State, determines the qualifications of each prospective candidate for the office of sheriff.

2.      The Secretary of State's office issues advisories to apprise the boards of elections of changes in law that may affect the boards' performance of their duties.

3.      The Secretary of State's office issued Advisory 2003-08 to apprise the boards of elections of the enactment of Substitute HB 75 (126th General Assembly), which amended the statute (RC 311.01) governing sheriff qualifications that would affect candidates for that office on and after December 9, 2003.

4.      The Secretary of State's office has not issued an advisory about sheriff candidates subsequent to Advisory 2003-08 because the statute governing

3

sheriff candidates has not been amended since December 9[,] 2003.

5.     To the extent that a question about whether a sheriff candidate is qualified for the ballot, Secretary Brunner has followed the advisory issued by her predecessor.

6.     The advisory leaves up to each county board to determine the meaning of "full time" under RC 311.01(B)(8).

7.     The Secretary's elections division has provided no advice to the boards as to whether an incumbent sheriff candidate is employed full-time by virtue of his office.

(Doc. # 20, at 1-2.)  In light of these stipulations and the evidence and arguments presented in connection with the briefing and at the oral hearing, the injunctive relief motion is now ripe for disposition.

## II.  Discussion

### A.  Standard Involved

The Sixth Circuit Court of Appeals has explained the inquiry involved in addressing a motion for a preliminary injunction:

> "When ruling on a motion for [injunctive relief], a district court must consider and balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction."

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004) (quoting *Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.,* 110 F.3d 318, 322 (6th Cir. 1997) (citations omitted)).  *See also Edward Rose & Sons*, 384 F.3d at 261 (quoting *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994)).  That court has further explained that a district court should not consider the foregoing factors as prerequisites to be

met; rather, these factors are to be balanced in a weighing of the equities involved.  *Edward Rose & Sons*, 384 F.3d at 261.  The moving party must demonstrate a right to injunctive relief by clear and convincing evidence.  *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 969 (6th Cir. 2002); *Honeywell, Inc. v. Brewer-Garrett Co.*, 145 F.3d 1331, 1998 WL 152951, at *3 (6th Cir. 2002) (unpublished table decision).

### B.  Analysis

The first factor this Court must weigh in determining whether preliminary injunctive relief is warranted is whether Roger Estill has established a substantial likelihood or probability of success on the merits.  Having considered the evidence and arguments presented in this case, the Court concludes that he has failed to demonstrate a sufficient likelihood of prevailing on the merits to support the requested injunctive relief.

In addition to imposing various other requirements, Ohio law provides that "no person is eligible to be a candidate for sheriff, and no person shall be elected or appointed to the office of sheriff, unless . . . [t]he person . . . has been employed . . . as a full-time peace officer . . . [or] . . . as a full-time law enforcement officer" within and for specified periods of time.  Ohio Rev. Code § 311.01(B)(8)(a) and (b).  Estill's attack on these "full-time" requirements is essentially threefold.  He first posits that the requirement of full-time employment is a limitation that serves to prevent ballot access without furthering a sufficient state interest.  Estill then argues that the requirement is unconstitutionally vague and, lastly, that the requirement violates equal protection.

A judicial officer in the Northern District of Ohio recently addressed § 311.01 and correctly set forth the inquiry applicable to such constitutional arguments:

5

When reviewing a constitutional challenge to a statute such as R.C. 311.01 that restricts a candidate's ballot access, it is well-settled that the Court applies the following factors: (1) "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate," and (2) "the precise interests put forward by the state as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564 (1983); *Burdick v. Takushi,* 504 U.S. 428, 434, 112 S.Ct. 2059 (1992); *Cicchino v. Luse,* 2000 U.S. Dist. LEXIS 10314, *13 (S.D. Ohio No. C-2-99-1174) (applying *Anderson-Burdick* test to challenge of R.C. 311.01 ).

*Aey v. Mahoning County Bd. of Elections*, No. 4:08 CV 405, 2008 WL 554700, at *4 (N.D. Ohio Feb. 26, 2008).  Applying this inquiry, the Court concludes that Estill is not likely to prevail on any of his arguments.

Estill asserts that the statutory requirement is not a content-neutral qualification, but is instead a means by which incumbents can suppress challengers and those who support the candidacy of potential challengers.  County sheriffs as appointing authorities can dictate the status designation of their employees.  By enabling them to designate otherwise qualified individuals as part time, Estill argues, these sheriffs can quell ballot access and competition via the full-time requirement.  Thus, without part-time officers having an alternative means of accessing the ballot, according to Estill, the only interest that the full-time requirement furthers is an interest in protecting incumbents.

That latter point falls apart when one considers the not insignificant point that *not every election for sheriff features an incumbent*.  The full-time requirement still applies in sheriff races lacking an incumbent.  Estill argues that "[t]here is no conceivable evidence that the 'full time' requirement, required only of candidates for county sheriff is narrowly tailored to serve any state interest – particularly when candidates for any other office, appearing on the same ballot, are

6

required to make no such certification, and incumbents seeking the same office, on the same ballot, are deemed to have satisfied the requirement." (Doc. # 8, at 8.) But this argument only serves to bolster Defendants' contentions. By imposing a qualification that inherently targets experience here, without mandating such a comparable experience requirement for other candidates for other positions, the Ohio General Assembly has indicated an intent to impose at least a minimal experience level for those who would be sheriff. Full-time employment carries with it an inherent amount of experience, even if Estill would question the amount of experience involved. It would be perfunctory to require those who are sheriffs who meet this burden when they have already done so and continue to do so by virtue of their positions. Thus, the selective imposition of an experience qualification here is per se evidence of a legislative interest in ensuring that the head county law enforcement officers will meet at least a basic level of experience. This is an important and legitimate state interest, even if Estill would argue that it does not go far enough by permitting those he implicitly characterizes as under-qualified individuals–those who served one day as full time officers–to be candidates.

Recognizing that the interest furthered by the statutory requirement is that a candidate be at least minimally qualified to serve in the position of sheriff is an important point because the statute is required to serve such an interest. It is not necessary that the statutory scheme be optimum, setting the most ideal qualifications. And it is certainly not necessary that the statutory scheme set a qualification or qualifications that this Court would necessarily impose. What matters is that there is a sufficient fit between this considerable state interest and the statutory requirement.

Attacking the character of this "fit" between the requirement and the qualification it

inherently targets, Estill asserts that the § 311.01 "full-time" requirement presents an equal protection violation. He asserts that some boards of elections improperly treat an administrative judge's finding that a candidate meets a requisite qualification as conclusive. This possibility is a problem with individual action and not an impermissible characteristic of the statutory scheme; nothing in § 311.01 dictates such action or endorses unequal treatment. Simply because some individual somewhere may err does not mean that the statutory scheme is violative of any individual's constitutional rights.

Moreover, there is insufficient evidence before the Court to support Estill's assertion that boards are wildly divergent in construing what constitutes full-time employment. The argument to this Court is that boards follow the classification made by an employer. Thus, if an employer has designated a prospective candidate as full time or part time, the board will honor that classification. Estill asserts that even this sort of consistent interpretation and action by boards of elections presents unconstitutionality because of different interpretations of status and classifications by appointing authorities. What this argument amounts to is that non-board decisions can therefore create constitutional infirmity. And what this argument leads to is either striking any such qualification requirement or a slippery slope that could only end in dubious judicial micromanaging of elections.

At oral argument, Estill's counsel argued that labels are everything in this case because his point is not what his job classification was or is, but whether the statutory requirement at issue serves its asserted governmental purpose. Estill asserts that application of the statutory requirement does not serve the state's interest in qualifications. The Ohio General Assembly has set a qualification requirement that, while it could be more stringent to *better* serve its goals,

nonetheless services those goals.  It is a standard that indicates an intent to set a minimal

qualification to seek the office of sheriff, and the fact that Estill contends that it can be construed

as not requiring *enough* full-time experience in his opinion does not invalidate the fact that the

statute establishes a qualification, thereby servicing a legitimate state interest.

Arguing for consideration of equivalents–that the hours he worked and his years of

experience equal the qualification requirement of full-time employment and the experience that

inherently targets–Estill asserts that he is of course qualified to be a candidate first and then an

elected sheriff.  This raises two points.

First, the Court notes Estill's argument that today's decision tracks what he deems a

"hypertechnical application of the statute."  (Doc. # 11, at 3.)  A label of "hypertechnical" is

often the dismissive refuge of those on the losing side of an argument.  The statute requires what

it requires, and while Estill may disagree with the qualification set forth in § 311.01(B)(8) and

consider himself more qualified than the experience that statute provision targets, ballot access

has never been tied to such subjective beliefs of potential candidates.  Estill is free to disagree

with a "hypertechnical" application of the statute–i.e., construing the statute to mean what is says

and no more or less–but he is not free to disregard it on grounds that because he finds it less

effective than it should be, it must be unconstitutional.

Second, Estill's argument begs the following question: How much experience is enough?

Whether the one day of "full-time" service that Estill contends would suffice to satisfy §

311.01(B)(8)(a) is ideal is not the province of this Court.  Rather, this Court is interested in

whether the statute presents a permissible qualification scheme.  To second guess the requisite

qualification as Estill asks this Court to do would mean that the Court would substitute its

9

judgment for that of the state's elected legislature.  Judges would have to decide what is equivalent experience by evaluating what time served meets the qualification interest.  This inquiry would quickly become inane.  If Estill is deemed by this Court to be "statutorily" qualified with a laudable 33 years of overall experience–combining 29 years of designated full-time service with differently designated service of more recent vintage, but irregular hours–then does an individual similarly qualify who has six hours less service per recent year?  Per month?  Per week?  And what if that other individual has worked six hours less, but has 34 years of overall experience?  Or 38 years of designated part-time experience?  What magic combination of years of overall experience and hours worked qualifies an individual to seek office, and how are judges equipped to make such sliding scale evaluations?

The answer of course is that the legislature has attempted to proscribe a minimal level of acceptable qualification, Defendants have construed the statutory scheme to permit broad ballot access, and this Court should not disturb that scheme.  Although the statute and the Secretary of State could have provided more definite guidance as to the test or a better test as to whether an individual satisfies the standard, they have provided sufficient guidance.

The construction of "full time" under attack might arguably water down the qualification level the Ohio General Assembly intended, if indeed one day could prove sufficient under certain circumstances as Estill contends, or it might precisely match the requirement if indeed the state legislature deemed that basic experience level enough.  Estill's argument that the qualification requirement is both insufficient and ambiguous does not prevail, however.

Essentially jumping off from this purported ambiguity, Estill asserts that the full-time requirement is void for vagueness.  His briefing (admittedly in his equal protection argument)

10

notes a number of provisions in the Ohio Revised Code that set forth various definitions of "full time."  But these provisions are distinct and control their related statutes; their mere presence does not mean that any legislative reference to "full time" to which these provisions do not apply is vague.  Rather, it means that in § 311.01, the Ohio General Assembly has not elected to define "full time" specifically within the legislative code as it has done elsewhere for other purposes.  It is axiomatic that what this means is that the state legislature has left the words to carry their presumptive ordinary meaning.  Unless for specified purposes, such as perhaps compliance with overtime law, full-time employment is defined by the employer, which is apparently the scheme to which the boards of elections across Ohio have defaulted.  It is well settled that the statutory scheme must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and must provide explicit standards for those who apply the law.  *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972).  Section 311.01(B)(8) satisfies these requirements, just as those cases to which Defendants direct this Court found that the "full time" language of other statutes were not unconstitutionally vague.[2]  (Doc. # 9, at 8-9.)

Section 311.01(B)(8) is therefore not unconstitutionally vague, and it imposes a content-neutral qualification requirement that reasonably and minimally limits ballot access to those

---

[2]  The Court also notes that, as Defendants point out in their briefing, the number of days Estill worked in May, June, July, August, September, and October (as well as part of November) 2007 undercut his argument of full-time employment or its equivalent.  *See* Doc. # 9, at 9.  The Court rejects, however, Defendants' notably weak arguments that (1) Estill's prior characterization of his employment as part time control here and (2) that Estill would not be able to testify credibly as a witness after describing himself as part time and now characterizing himself as full time.  The former argument does not examine whether the admissions fall under the same meaning of "full time" employed in the statutory scheme, and the latter argument is undercut by this fact, as well as the fact that few individuals would know of the discrepancy.  The Court also finds it difficult to believe that few would consider it as damning as Defendants purport to believe.

who, by virtue of satisfying the full-time employment requirement, reflect a basic level of experience or service that is not unlike the experience requirement found in § 311.01(B)(9).[3] This is a reasonably limited and therefore permissible regulation of the ballot.  *See Aey*, 2008 WL 554700, at *5 ("The Supreme Court has long recognized that states retain the power to regulate and control their elections through the establishment of ballot-access requirements."). Both statutory provisions ultimately target experience via similar requirement routes.  Although (B)(8) arguably imposes a more restrictive (yet still permissible) requirement than (B)(9), both provisions nonetheless allow for means to gain ballot access (especially when crediting Estill's construction of (B)(8) as requiring one day of full-time service or employment, which a prospective candidate could fulfill by obtaining a qualifying position *designated* as full time). Thus, Estill has failed to demonstrate a substantial likelihood or probability of his succeeding on the merits.  For the same foregoing reasons, as well as the fact that there is no right to vote for an individual who does not qualify as a candidate, Denise Estill's right to injunctive relief similarly fails.

Having concluded that the first injunctive relief factor weighs against granting a preliminary injunction, the Court need not discuss the remaining factors in much detail.  This is because it is well settled that "a district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if

---

[3]  Defendants direct this Court to the fact that, in holding that § 311.01(B)(9) presents a content-neutral experience requirement, the Ohio Supreme Court correctly noted that "[c]andidates for sheriff who do not meet the requirements of R.C. 311.01(B)(9) are not an identifiable, historically protected political group."  *State ex rel. Watson v. Hamilton County Bd. of Elections*, 88 Ohio St. 3d 239, 260 (2000).  In addition to the undersigned, at least one other federal judicial officer agrees.  *See Aey*, 2008 WL 554700, at *5.

fewer factors are determinative of the issue." *Nat'l Hockey League Players' Assn. v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir. 2003). The Court notes, however, that Estill has presented an argument that absent an injunction, he will be irreparably harmed in that he will not appear on the ballot, and that although issuance of the requested injunction will not cause substantial harm, such issuance is not in the public interest because there is no reasoned basis for this action. This Court also notes that Estill asserted at oral argument that the Court could err on the side of granting an injunction because there could be no harm to the state, in that he could not act as a spoiler in a two-person election. Permitting by injunction voters to cast votes for an individual who might not even be statutorily qualified to be on the ballot is not harmless under the facts presented here. The Court rejects Estill's invitation to grant an injunction on these dubious grounds.

Estill has insufficiently demonstrated under the four preliminary injunction factors a right to injunctive relief here.

### III.  Conclusion

For the foregoing reasons, the Court **DENIES** Roger Estill's motion for a preliminary injunction. (Doc. # 3.)

**IT IS SO ORDERED**.

_____/s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE