UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROGER M. ESTILL, et al.,

       Plaintiffs,                                Case No. 2:08-cv-606
                                                    JUDGE GREGORY L. FROST
   v.                                            Magistrate Judge Terence P. Kemp

GEORGIANNA COOL, et al.,

       Defendants.

## OPINION AND ORDER

This matter came before the Court on October 7, 2008 for a bench trial on Plaintiffs' June 24, 2008 Complaint. Having taken the matter under advisement at the conclusion of that trial, the Court now issues its decision in favor of Defendants and instructs the Clerk to enter judgment accordingly.

**I.**

Plaintiffs, Roger Estill and Denise Estill, initiated this declaratory judgment and 42 U.S.C. § 1983 action on June 24, 2008 when they filed a complaint for declaratory and injunctive relief related to Roger Estill's attempt to be placed on the November 4, 2008 ballot as an independent candidate for sheriff of Holmes County, Ohio.[1]  (Doc. # 2.)  On June 27, 2008,

---

[1] It appeared to this Court that Plaintiffs were electing to abandon a state law claim earlier in this litigation when they requested entry of final judgment against them based on reasoning that did not reach the state law claim. At trial, Plaintiffs then made an oral motion to amended their pleading to delete the state law open meetings claim. Plaintiffs also made an oral motion to amend their Complaint so that they were not asserting claims against Defendants in Defendants' individual capacities. The Court granted both motions to amend.

one or more of the plaintiffs[2] then filed a motion for a preliminary injunction variously seeking to prevent "Defendants from enforcing the full time requirement contained in Ohio Rev. Code § 311.01(B)(8)(a) and/or (b)" (Doc. # 3, at 1) or to order "Plaintiff Roger M. Estill's name be placed on the ballot for the November 4, 2008 general election for the office of Sheriff of Holmes County, Ohio" (Doc. # 11, at 11). Consequently, pursuant to S.D. Ohio Civ. R. 65.1(a), the Court held a July 1, 2008 informal preliminary telephone conference with counsel for Plaintiffs and counsel for Defendants, which resulted in an agreed-upon briefing schedule and an oral hearing.

  Following the hearing, the Court issued a decision denying injunctive relief, concluding that there was no right to a preliminary injunction in large part because there was a failure "to demonstrate a sufficient likelihood of prevailing on the merits to support the requested injunctive relief." (Doc. # 27, at 5.) Plaintiffs appealed that decision (Doc. # 28) and then joined Defendants in asking this Court to stay further proceedings in this case during that appeal (Doc. # 31). Within hours of this Court granting the requested stay (Doc. # 32), which vacated the September 30, 2008 expedited trial date, the Sixth Circuit affirmed the preliminary injunction decision (Doc. # 33). In so doing, the appellate court held that "the public interest in orderly election administration militates in favor of holding that the district court did not abuse its discretion" and that the "attack on [Ohio Rev. Code] § 311.01(B)(8)'s experience requirement does not have a strong likelihood of success." (Doc. # 33, at 3.) Specifically, the Sixth Circuit

---

[2] As the Court previously noted, only one plaintiff, presumptively Roger Estill, actually moved for a preliminary injunction, although the briefing at times included his wife Denise. *Compare* Doc. # 3, at 1 *with* Doc. # 8, at 1 & Doc. # 11, at 5. The Court therefore considered the arguments of both Plaintiffs in addressing the injunctive relief component of this case.

held:

> [A]s is set out more fully in Judge Frost's well-reasoned opinion, Estill's attack on § 311.01(B)(8)'s experience requirement does not have a strong likelihood of success. Several cases have upheld this and similar requirements, and Estill cites none–and this court is aware of none–that have found such a requirement unconstitutional. *See Cicchino v. Luse,* 2000 U.S. Dist. LEXIS 10314 (S.D. Ohio) (upholding § 311.01(B)(8)'s training and certification requirement for Sheriff candidates); *Aey v. Mahoning County Bd. of Elections,* 2008 U.S. Dist. LEXIS 19247 (N.D .Ohio) (upholding Ohio Rev.Code Ann. § 311.01(B)(9)'s supervisory experience and education requirements for Sheriff candidates); *State ex rel. Watson v. Hamilton County Bd. of Elections,* 88 Ohio St.3d 239 (2000) (same).

*Estill v. Cool*, No. 08-4190, 2008 WL 4411829, at *1 (6th Cir. Sept. 29, 2008); (Doc. # 33, at 3-4 (slip opinion)).

Immediately after receiving the September 29, 2008 appellate decision and its mandate, this Court contacted counsel for Plaintiffs and then counsel for Defendant Brunner by telephone. The Court inquired whether Plaintiffs wished to proceed on the original September 30, 2008 expedited trial date, which the Court offered to reinstate. Instead of proceeding with that trial, Plaintiffs filed a motion and supporting memorandum on the original trial date that asked this Court "to combine the trial on the merits with the hearing on the Motion for Preliminary Injunction and enter Final Judgment adopting the decision on the Motion for preliminary relief as a final order." (Doc. # 34, at 2.) The defendants who comprise the Holmes County Board of Elections did not oppose the motion. Defendant Brunner did oppose the motion, however, and argued that "[b]efore final judgment is issued in this case . . . it is necessary to provide evidence to this Court about how ballot rotation works and how difficult it is for a board of elections to add a name to a ballot after voting has begun" as well as "evidence . . . about the harm that will be suffered by the local board of elections and all voters in Holmes County were either this

Court or the Court of Appeals to order that Roger Estill be placed on the ballot as a candidate for Sheriff." (Doc. # 35, at 1-2.)

Recognizing that Plaintiffs are likely to argue on appeal that they are entitled to injunctive relief ordering that Roger Estill be placed on this November's ballot and that the Ohio Secretary of State was entitled to present evidence and argument against that position, this Court denied the request to enter final judgment and set an expedited trial date of October 7, 2008. (Doc. # 37.) At that trial, the parties expressly agreed to incorporate all of the preliminary injunction proceedings and evidence into the trial proceedings, as well as all prior stipulations. The parties submitted additional stipulations, and the Court entertained additional argument and accepted two Ohio Secretary of State directives as exhibits, Directive 2008-59 and Directive 2008-89.

Defendants presented testimony from one witness, Patricia Wolfe, the elections administrator for the Ohio Secretary of State. Wolfe detailed the pre-election preparation of electronic voting machines, which essentially breaks down into an entry phase in which ballot information is entered into a database, leading to a "proof" phase in which testing is done to ensure accuracy and logic, after which a machine is "locked." Wolfe also explained Holmes County's use of paper ballots if they are requested by a voter or if the electronic voting machines should fail. Her testimony explained that placing a candidate on the ballot at this date would require the creation of a second database, resulting in repeating the steps outlined above.

In addition to the expedited trial proceedings, Plaintiffs and the Holmes County Defendants have stipulated to the following facts:

1. Plaintiff Roger M. Estill is a resident and qualified elector of Holmes County. Ohio, who timely filed a petition seeking placement on the

4

        November 4, 2008 general election ballot as an independent candidate for the office of Holmes County Sheriff.

2.       Plaintiff Denise A. Estill is a resident and qualified elector of Holmes County, Ohio. who supports the candidacy of Plaintiff Roger Estill for the office of Holmes County Sheriff and intends to vote for Plaintiff Roger Estill for such office at the November 4, 2008 general election if his name appears on the ballot.

3.       Defendants Georgianna Cool, Lucille L. Hastings, Wesley J. Schmucker, and Ann Stotler are the members of the Holmes County Board of Elections ("Board of Elections"), the duly authorized board of elections of Holmes County, Ohio that, pursuant to Ohio Rev. Code Chapter 3501, is charged with the authority and power to conduct all elections within Holmes County, Ohio.

4.       Defendant Jennifer L. Brunner ("Secretary of State") is the Secretary of State of the State of Ohio, who is charged with the authority to direct and advise the county boards of elections with respect to the conduct of all elections in the State of Ohio.

5.       On January 28, 2008, Plaintiff Roger Estill filed with Defendant Board of Elections a nominating petition pursuant to Ohio Rev. Code §§ 3513.257 and 3513.261 to be an independent candidate for the office of Holmes County Sheriff at the November 4, 2008 general election.

6.       On May 13, 2008, Nathan E. Fritz, the chief deputy for the incumbent Holmes County Sheriff, Timothy W. Zimmerly, filed a protest of Plaintiff Roger Estill's candidacy. In the protest, Mr. Fritz alleged that Plaintiff Roger Estill did not meet the qualifications to run for sheriff under Ohio Rev. Code §311.01(B)(8)(a) or (b).

7.       On June 4, 2008, Defendant Board of Elections held a hearing and sustained the protest challenging Plaintiff's qualifications to appear on the November 4, 2008 general election ballot.

8.       The incumbent Holmes County Sheriff, Timothy Zimmerly, is the only candidate that Defendant County Board of Elections has certified for the November 4, 2008 general election for the office of county sheriff. Plaintiff Roger Estill and Zimmerly are the only two individuals to file petitions to be candidates in 2008 for the office of Holmes County Sheriff.

(Doc. # 21, at 1-2.) Additionally, Plaintiffs have entered into the following factual stipulations

with Defendant Brunner:

1. The board of elections of the appropriate county, not the Secretary of State, determines the qualifications of each prospective candidate for the office of sheriff.

2. The Secretary of State's office issues advisories to apprise the boards of elections of changes in law that may affect the boards' performance of their duties.

3. The Secretary of State's office issued Advisory 2003-08 to apprise the boards of elections of the enactment of Substitute HB 75 (126th General Assembly), which amended the statute (RC 311.01) governing sheriff qualifications that would affect candidates for that office on and after December 9, 2003.

4. The Secretary of State's office has not issued an advisory about sheriff candidates subsequent to Advisory 2003-08 because the statute governing sheriff candidates has not been amended since December 9[,] 2003.

5. To the extent that a question about whether a sheriff candidate is qualified for the ballot, Secretary Brunner has followed the advisory issued by her predecessor.

6. The advisory leaves up to each county board to determine the meaning of "full time" under RC 311.01(B)(8).

7. The Secretary's elections division has provided no advice to the boards as to whether an incumbent sheriff candidate is employed full-time by virtue of his office.

(Doc. # 20, at 1-2.)

All of the parties have agreed upon the following stipulated facts:

1. For the November 4, 2008 election cycle, Holmes County has 18, 100 eligible voters.

2. The Holmes County, Ohio Board of Elections (the "Board") currently has 88 voting machines, and these are spread among 19 polling places for use in the November 4, 2008 election, including for use in early, in-person absentee voting. Of these, there are 4 voting machines currently in service for in-person absentee voting.

3. Absentee voting began on September 30, 2008.

4. As of October 7, 2008, the status of programming and testing of voting machines for use for in-person absentee voting is the programming is complete but untested.  Absentee voting on a machine will not commence until testing of that machine is complete.

5. As of October 7, 2008, the status of programming and testing of voting machines for use on November 4, 2008 is the programming is complete but untested.

6. Re-programming a voting machine will require the act of programming and testing (including for logic and accuracy).  The act of reprogramming is anticipated to take 2 hours total.  The testing is anticipated to take $1^{1/2}$ hours per machine.  Were the Board to schedule re-programming and testing for each of its voting machines currently in use and planned for use on November 4, 2008, the anticipated completion date of such work is approximately two weeks from when started.  The estimated cost for reprogramming the voting machines is $1,056.00.

7. Were the Board to revise the absentee ballots, the anticipated date by which the Board could begin to mail the revised ballots to all electors is one week from start.  The estimated cost of revising and resending absentee ballots is $4.750.00.

8. By directive from the Secretary of State, the Board must maintain paper ballots at each polling place.  The order for paper ballots for the polls is currently at the printer.

9. Holmes County currently has availability of an on demand system for absentee voting; however, it can only print one ballot at a time or 250 ballots per day.

10. As of 8:00 a.m. on October 7, 2008:

    a. The Board had received 933 requests for absentee ballots; approximately an additional 100 requests arrived at 9:00 a.m.;
    b. The Board had mailed 785 absentee ballots to voters and 54 hand carried;
    c. Voters cast 94 absentee ballots in person; and,
    d. In addition, the Board has received 157 absentee ballots cast.

(Doc. # 41, at 1-2.)

In light of these stipulations and the evidence and arguments presented in connection with the prior briefing , preliminary injunction proceeding, and the trial, the case is now ripe for disposition.

## II.

In addition to imposing various other requirements, Ohio law provides that "no person is eligible to be a candidate for sheriff, and no person shall be elected or appointed to the office of sheriff, unless . . . [t]he person . . . has been employed . . . as a full-time peace officer . . . [or] . . . as a full-time law enforcement officer" within and for specified periods of time. Ohio Rev. Code § 311.01(B)(8)(a) and (b). The Ohio General Assembly has not elected to define § 311.01's use of "full time" specifically within the legislative code as it has done elsewhere for other purposes. It is axiomatic that what this means is that the state legislature has left the words to carry their presumptive ordinary meaning. Thus, as this Court previously found, unless for specified purposes–such as perhaps compliance with overtime law–full-time employment is defined by the employer, which is apparently the scheme to which the boards of elections across Ohio have defaulted. Section 311.01(B)(8) thus imposes a content-neutral qualification requirement that reasonably and minimally limits ballot access to those who, by virtue of satisfying the full-time employment requirement, reflect a basic level of experience or service that is not unlike the experience requirement found in § 311.01(B)(9).[3] This is a reasonably limited and therefore

---

[3] Defendants direct this Court to the fact that, in holding that § 311.01(B)(9) presents a content-neutral experience requirement, the Ohio Supreme Court correctly noted that "[c]andidates for sheriff who do not meet the requirements of R.C. 311.01(B)(9) are not an identifiable, historically protected political group." *State ex rel. Watson v. Hamilton County Bd. of Elections*, 88 Ohio St. 3d 239, 260 (2000). In addition to the undersigned, at least one other federal judicial officer agrees. *See Aey v. Mahoning County Bd. of Elections*, No. 4:08 CV 405, 2008 WL 554700, at *5 (N.D. Ohio Feb. 26, 2008).

permissible regulation of the ballot. *See Aey*, 2008 WL 554700, at *5 ("The Supreme Court has long recognized that states retain the power to regulate and control their elections through the establishment of ballot-access requirements."). Both statutory provisions ultimately target experience via similar requirement routes. Although (B)(8) arguably imposes a more restrictive (yet still permissible) requirement than (B)(9), both provisions nonetheless allow for means to gain ballot access (especially when crediting Estill's construction of (B)(8) as requiring one day of full-time service or employment, which a prospective candidate could fulfill by obtaining a qualifying position *designated* as full time).

In their Complaint, Plaintiffs assert three basic challenges to the "full-time" requirement. They posit that the requirement of full-time employment is a limitation that serves to prevent ballot access without furthering a sufficient state interest, that the requirement is unconstitutionally vague, and that the requirement violates equal protection. At trial, Plaintiffs elected to abandon arguing the latter two claims, to which this Court incorporates by reference the analysis of its prior preliminary injunction decision. (Doc. # 27.) Plaintiffs now focus only on whether the full-time requirement satisfies the rational basis test.

A judicial officer in the Northern District of Ohio recently addressed § 311.01 and correctly set forth the inquiry applicable to similar constitutional arguments:

> When reviewing a constitutional challenge to a statute such as R.C. 311.01 that restricts a candidate's ballot access, it is well-settled that the Court applies the following factors: (1) "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate," and (2) "the precise interests put forward by the state as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564 (1983); *Burdick v. Takushi,* 504 U.S. 428, 434, 112 S.Ct. 2059 (1992); *Cicchino v. Luse,* 2000 U.S. Dist. LEXIS 10314, *13 (S.D. Ohio No. C-2-99-1174) (applying *Anderson-*

*Burdick* test to challenge of R.C. 311.01 ).

*Aey*, 2008 WL 554700, at *4. The Sixth Circuit has also explained that a statute that does not implicate a plaintiff's fundamental rights receives rational-basis review, which involves asking whether "the statute at issue is 'rationally related to legitimate government interests.' " *Does v. Munoz*, 507 F.3d 961, 966 (6th Cir. 2007) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997)). Applying this inquiry, the Court concludes that Plaintiffs cannot prevail.

By imposing a qualification that inherently targets experience here, without mandating such a comparable experience requirement for other candidates for other positions, the Ohio General Assembly has indicated an intent to impose at least a minimal qualification for those who would be sheriff. Full-time employment carries with it an inherent amount of skill, experience, training, knowledge, and/or ability, even if Plaintiffs would question the amounts involved. The Court again concludes that the selective imposition of an experience qualification here is per se evidence of a legislative interest in ensuring that the head county law enforcement officers will meet at least a basic level of qualification or qualifying experience of a specific sort. This is an important and legitimate state interest, even if Plaintiffs would argue that it does not go far enough by permitting those he implicitly characterizes as under-qualified individuals–those who served one day as full time officers–to be candidates.

Recognizing that the interest furthered by the statutory requirement is that a candidate be at least minimally qualified to serve in the position of sheriff is an important point because the statute is required to serve such an interest. It is not necessary that the statutory scheme be optimum, setting the most ideal qualifications. And it is certainly not necessary that the statutory scheme set a qualification or qualifications that this Court would necessarily impose. What

matters is that there is a sufficient fit between this considerable state interest and the statutory requirement. The qualification requirement must be rationally related to the state interest involved.

Continuing to attack the character of this "fit" between the requirement and the qualification it inherently targets, Plaintiffs again assert that the § 311.01 "full-time" requirement is not so much a qualification requirement as a requirement targeting the mode of qualification. Counsel for Plaintiffs in fact expressed disbelief that both this Court and the court of appeals have regarded the full-time requirement as an experience requirement at all. They argue labels are everything in this case because the point is not what a potential candidate's job classification was or is, but whether the statutory requirement at issue serves its asserted governmental purpose. Here, the Ohio General Assembly has set a qualification requirement that, while it could arguably be more stringent to *better* serve its goals, nonetheless indisputably services those goals. It is a standard that sets a minimal qualification to seek the office of sheriff, and the fact that Plaintiffs have at time throughout this litigation posited that it can be construed as not requiring *enough* full-time experience does not invalidate the fact that the statute establishes a qualification, thereby servicing a legitimate state interest.

By arguing for consideration of equivalents–that the hours Roger Estill worked and his years of experience equal the qualification requirement of full-time employment and the experience that inherently targets–Plaintiffs assert that he is of course qualified to be a candidate first and then an elected sheriff. This again raises several points.

The Court notes Plaintiffs' argument that this Court's recognition of the plain language of the statute tracks what they deem a hypertechnical application of the statute. But as this Court

11

stated in its prior decision, a label of "hypertechnical" is often the dismissive refuge of those on the losing side of an argument. The statute requires what it requires, and while Plaintiffs may disagree with the qualification set forth in § 311.01(B)(8) and consider Roger Estill as or more qualified than the experience that statute provision targets, ballot access has never been tied to such subjective beliefs of potential candidates or their supporters. Plaintiffs are free to disagree with a "hypertechnical" application of the statute–i.e., construing the statute to mean what is says and no more or less–but they are not free to disregard it on grounds that because they consider it less effective than it could or should be, it must be unconstitutional.

Plaintiffs' argument also continues to beg the following question: How much experience is enough? Whether the one day of "full-time" service that Plaintiffs contend would suffice to satisfy § 311.01(B)(8)(a) is ideal is not the province of this Court. Rather, this Court is interested in whether the statute presents a permissible qualification scheme. To second guess the requisite qualification as Plaintiffs ask this Court to do would mean that the Court would substitute its judgment for that of the state's elected legislature. Judges would have to decide what is equivalent experience by evaluating what time served meets the qualification interest. This inquiry would quickly become inane. If Roger Estill is deemed by this Court to be "statutorily" qualified with a laudable 33 years of overall experience–combining 29 years of designated full-time service with differently designated service of more recent vintage, but irregular hours–then does an individual similarly qualify who has six hours less service per recent year? Per month? Per week? And what if that other individual has worked six hours less, but has 34 years of overall experience? Or 38 years of designated part-time experience? What magic combination of years of overall experience and hours worked qualifies an individual to

seek office, and how are judges equipped to make such sliding scale evaluations?

The answer of course is that Ohio's legislature has attempted to proscribe a minimal level of acceptable qualification, Defendants have construed the statutory scheme to permit broad ballot access, and this Court should not disturb that scheme. Although the Ohio General Assembly could have mandated a more stringent qualification requirement or provided for substitutions or equivalents, nothing is no requirement demanding such action. All that is required is a rational connection between the aim of the statutory scheme and the requirement imposed, and that fit exists here.

Finally, Plaintiffs' argument that there is no rational basis to distinguish between a qualification of full-time employment versus part-time employment misses the point. The law does not require Ohio's General Assembly to have a rational basis to impose one requirement while rejecting another or to impose one qualification while rejecting a subjectively equivalent substitute experience. What the law requires is simply rationality for what was imposed. Plaintiffs do not challenge the fact that the state legislature can impose a qualification requirement–they concede that point and the state interest involved here–and they do not even truly continue to attack the nature of the experience qualification imposed here. Rather, Plaintiffs are simply upset that the state has decided not to allow substitutes or equivalents. They *assume* that possessing the skills, training, and experience to obtain full-time employment is the same as those involved in obtaining part-time employment and then complain that the state legislature exercised its discretion to prefer and select experience of one nature over experience of another. But in arguing that there is no rational distinction between full-time and part-time experience when individuals may have worked the same hours in the same day–when much more

than mere hours worked may figure into obtaining full versus part-time status–Plaintiffs seek to bootstrap unconstitutionality on mere legislative prerogative. The issue is not the duration of the qualifying experience, or hours worked, as Plaintiffs contend, but the substantive intangibles of skill, experience, and training that enable an individual to obtain a full-time as opposed to part-time position. The employment requirement embodies an experience qualification.

No court should sit as a superlegislature and second guess a state's legislative body when that body has a sufficient basis for its actions, however fine the distinctions at play in those actions may be. Moreover, as the Sixth Circuit has explained, "[i]t is not difficult for a statute to survive rational basis review. The court is not limited to the defense proffered by [a defendant]; in order to defeat a statute subject to rational basis review, [a plaintiff] must negate 'every conceivable basis' that could support the statute." *Norton Constr. Co. v. U.S. Army Corps of Engineers*, 280 F. App'x 490, 495 (6th Cir. 2008) (quoting *Hadix v. Johnson,* 230 F.3d 840, 843 (6th Cir. 2000)). Plaintiffs have failed to defeat every conceivable basis supporting the legislative action at issue here.

Imposing a requirement of any sort means rejecting other requirements. The wisdom of many such choices will always be open to debate by individuals of equal intellect, but the mere act of choosing is neither irrational nor unconstitutional. Plaintiffs' argument at its core is that the Ohio General Assembly was irrational in not selecting the alternative they support: part-time employment as a qualifier for candidacy. But the limited focus of today's analysis is not on whether there is a rational basis for *not* selecting every potentially unlimited qualification. Rather, the focus is on what the state legislature actually did elect to impose as a qualification and whether there is a rational basis between that election and the statutory goal. The statute

must survive judicial scrutiny if it is rationally related to a legitimate state purpose.  *See Norton Constr. Co.*, 280 F. App'x at 495.  The state has a permissible interest in regulating ballot access and in imposing threshold qualifications for candidacy.  Because § 311.01(B)(8) satisfies the applicable test, the Court cannot find any asserted constitutional violation and cannot afford Plaintiffs the relief the seek.

Having reached this conclusion on the substantive merits of Plaintiffs' claims, the Court recognizes that the parties' arguments regarding the appropriate remedy or remedies available if Plaintiffs had succeeded are moot.  Because any opinion the Court would offer in this regard would be mere dictum, the Court declines to engage in speculative analysis.  The parties have built a factual record on the remedy issues, however, in the event that the court of appeals should change its merits analysis on the second appeal arising from this litigation and elect to reach the remedy arguments.

### III.

For the foregoing reasons, the Court finds in favor of Defendants.  The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

    /s/ Gregory L. Frost  
GREGORY L. FROST  
UNITED STATES DISTRICT JUDGE